IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **FANTASTIC SAMS FRANCHISE CORP.,**<br><br>Plaintiff,<br><br>v.<br><br>**BOYNTON WEEKES,**<br>**GEORGE JACKSON, JEROME WILLIAMS,**<br>**GFG SALON HOLDINGS, LLC, and**<br>**GLOBAL FRANCHISING GROUP, LLC,**<br><br>Defendants. | Case No.: |

## COMPLAINT

Plaintiff Fantastic Sams Franchise Corporation, by its attorneys, and for its Complaint against defendants Boynton Weekes, George Jackson, Jerome Williams, GFG Salon Holdings, LLC, and Global Franchising Group, LLC states as follows:

## PARTIES

1.  Plaintiff Fantastic Sams Franchise Corporation ("Fantastic Sams") is a Delaware corporation with its principal place of business in Beverly, Massachusetts.

2.  Defendants Boynton Weekes, George Jackson, and Jerome Williams (the "Individual Defendants") are New Jersey citizens and residents.

3.  Defendant GFG Salon Holdings, LLC ("GFG") is a New Jersey limited liability company headquartered in East Brunswick, New Jersey. Its members are the Individual Defendants.

4. Defendant Global Franchising Group, LLC ("Global") is a New Jersey limited liability company headquartered in East Brunswick, New Jersey. Its members are defendants Weekes and Jackson.

## JURISDICTION AND VENUE

5. The Court has original subject matter jurisdiction of this action under 28 U.S.C. § 1332, in that this action is a civil action between citizens of different States, wherein the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6. Venue is proper in this judicial district under 28 U.S.C. § 1391, in that defendants reside in and a substantial part of the events or omissions giving rise to the claims asserted in the Complaint occurred in this judicial district.

## RELEVANT FACTS

7. Fantastic Sams is the franchisor of the Fantastic Sams Salons® brand of family hair care salons located throughout the United States.

8. The Fantastic Sams franchise system was previously structured as a three-tiered system where the franchisor granted regional franchise rights to regional owners who in turn granted local franchises to subfranchisees.

9. Defendants Weekes and Jackson, through their entity Global, were regional owners of certain counties in New Jersey and Pennsylvania.

10. The Individual Defendants, through GFG, also owned and operated a franchised Fantastic Sams Salon at 2495 US Highway 1, Suite 23A, Lawrenceville, New Jersey 08648 (the "Salon").

11. The Salon was not in the regional territory owned by Global. Rather, it was in a region owned by Fantastic Sams's predecessor-in-interest Fantastic Sams Salons Corporation

("Salons Corp"). Salons Corp recently merged with several affiliates and Fantastic Sams is the surviving entity and Salons Corp's successor.

12. In 2012, Salons Corp began negotiating with defendants Weekes and Jackson to purchase Global's territory rights.

13. In or around July 2012, during such negotiations, defendants Weekes and Jackson promised Salons Corp that if Salons Corp purchased their territory rights, they would renew or enter into a new license agreement for the Salon and operate it for a full additional ten-year term.

14. Accordingly, on July 27, 2012, Salons Corp, as franchisor, and GFG, as franchisee, entered into a written Salon License Agreement (the "SLA") pursuant to which Salons Corp granted GFG the right and GFG assumed the obligation to continue operating the Salon for an additional ten-year term.

15. The parties factored the revenue stream Fantastic Sams could expect to receive from the SLA into their price negotiations for Global's territory rights.

16. Also on July 27, 2012, Salons Corp, as purchaser, Global, as seller, and defendants Weekes and Jackson, as principals, entered into a written Asset Purchase Agreement, under which Salons Corp purchased Global's territory rights.

17. The requirement that GFG enter into the SLA was an express condition precedent to the Asset Purchase Agreement.

18. Under the terms of the SLA, GFG agreed to, among other things, (i) make certain weekly payments to Fantastic Sams, among them, fixed weekly license and national advertising fees in amounts specified in the agreement, (ii) purchase Fantastic Sams's branded products, and (iii) purchase other products purchased under purchasing arrangements established by Fantastic Sams for the full term of the SLA.

19. GFG further acknowledged that it was obligated to pay such fixed weekly license and national advertising fees for the duration of the ten-year term.

20. Each of the Individual Defendants guaranteed in writing all of GFG's obligations under the SLA, including all of GFG's payment obligations.

21. On or around July 6, 2015, GFG placed a stop payment order with its bank and since that time has failed and refused to pay Fantastic Sams the weekly license and national advertising fees it owes.

22. On or around July 13, 2015, GFG closed the Salon.

23. The SLA provides that Fantastic Sams may terminate the agreement immediately in the event, among others, (i) GFG's bank for two consecutive weeks fails to honor the authorized bank draft or other prepayment arrangement for any weekly fee or (ii) GFG abandons the Salon.

24. On November 5, 2015, Fantastic Sams served GFG with a written notice of default based on GFG's repeated failure to pay the weekly fees owed to Fantastic Sams and abandonment of the Salon.  Rather than immediately terminate the SLA, Fantastic Sams afforded GFG a fifteen-day cure period.

25. Despite the default notice and cure opportunity afforded to it, GFG failed and refused to cure its defaults.

26. As of November 5, 2015, defendants owed $9,068.24 in past due amounts and $139,351.50 in fixed weekly fees owed for the duration of the SLA's term.

27. Fantastic Sams at all times fully performed all of its obligations under the SLA.

28. The SLA contains an arbitration provision that excludes from its scope "matters relating to the collection of monies owed to [Fantastic Sams] by Licensee."  Accordingly,

Fantastic Sams brings this action without waiving its right to arbitrate any other or future controversy or claim with defendants arising out of the SLA.

## COUNT I
## BREACH OF CONTRACT

29. Fantastic Sams repeats and realleges ¶¶ 1 through 28 of its Complaint, as this ¶ 29.

30. GFG's failure to operate the Salon in accordance with the SLA's terms for the full term of the SLA constitutes a material breach of the SLA.

31. As a direct and proximate result of GFG's material breach, Fantastic Sams has sustained damages in an amount to be proved at trial.

## COUNT II
## BREACH OF GUARANTY

32. Fantastic Sams repeats and realleges ¶¶ 1 through 31 of its Complaint, as this ¶ 32.

33. The Individual Defendants personally guaranteed GFG's obligations under the SLA and agreed to be personally bound by, and personally liable for the breach of, each and every provision of the SLA.

34. The Individual Defendants' failure to ensure that GFG fully performed all of its obligations under the SLA constitutes a material breach of their guarantees.

35. As a direct and proximate result of the Individual Defendants' material breaches of their guarantees, Fantastic Sams has sustained damages in an amount to be proved at trial.

## COUNT III
## FRAUDULENT INDUCEMENT

36. Fantastic Sams repeats and realleges ¶¶ 1 through 35 of its Complaint, as this ¶ 36.

37. Defendants Weekes, Jackson, and Global each represented to Salons Corp in July 2012 that they, through GFG, would operate the Salon for a full additional term.

38. Defendants Weekes, Jackson, and Global knew that in entering into the Asset Purchase Agreement, Salons Corp was relying on their representations that they would operate the Salon for the full term, that but for those representations, Salons Corp would not have entered into the Asset Purchase Agreement, and that the price Salons Corp agreed to for the regional territory rights was based on GFG's operation of the Salon for the full ten-year term.

39. Upon information and belief, at the time defendants Weekes, Jackson, and Global made such representations, they had no present intention of operating the Salon for the full ten-year term.

40. They made the representations for the purpose of inducing Fantastic Sams to enter into the Asset Purchase Agreement.

41. Fantastic Sams relied on Weekes, Jackson, and Global's representation to its detriment by entering into the Asset Purchase Agreement, resulting in damage in an amount to be proved at trial.

**WHEREFORE**, Fantastic Sams respectfully asks that the Court render judgment in its favor and against:

> A. The Individual Defendants and GFG, jointly and severally, for damages for defendants' breaches of the SLA and guarantees, including, among other

things, past due amounts owed and lost future weekly license fees and national advertising fees, in amounts to be determined at trial in excess of $75,000, exclusive of interest and costs;

B. Defendants Weekes, Jackson, and Global, jointly and severally, for damages, including punitive damages, arising out of their fraudulent misrepresentations;

C. All defendants, jointly and severally, an award of attorneys' fees and costs incurred in connection with this action as provided for in the SLA; and

D. Any defendant for any other and further relief as the Court deems just and proper.

Dated: January 28, 2016

**PECKAR & ABRAMSON, P.C.**
Attorneys for Plaintiff
FANTASTIC SAMS FRANCHISE CORP.

By: ___/s/ Alexander X. Saunders_____
    ALEXANDER X. SAUNDERS

and

**CHENG COHEN LLC**
Fredric A. Cohen (*pro hac vice forthcoming*)
Aaron-Michael Sapp (*pro hac vice forthcoming*)
311 North Aberdeen Street, Suite 400
Chicago, Illinois 60607
(312) 243-1701
fredric.cohen@chengcohen.com
aaron-michael.sapp@chengcohen.com